O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GARBER,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MOHAMMADI, #36506, et al.,<br><br>                    Defendants. | ) Case No. CV 10-7144-DDP (RNBx)<br>)<br>)<br>) **ORDER GRANTING IN PART AND**<br>) **DENYING IN PART MOTION TO DISMISS**<br>)<br>) [Dkt. No. 76.]<br>)<br>)<br>) |

Presently before the court is Defendants City of Los Angeles, Los Angeles Police Department, Hamed Mohammadi, and Amy Standage's Motion to Dismiss Plaintiff's Complaint. Having considered the parties' submissions, the court adopts the following order.

## PROCEEDINGS

On September 29, 2010, plaintiff filed a pro se civil rights action herein pursuant to 42 U.S.C. § 1983, after being granted leave to proceed in forma pauperis. Named in the Complaint as defendants were the City of Los Angeles (the "City"); the Los Angeles Police Department (the "LAPD"); LAPD Officer Mohammadi ("Mohammadi"), LAPD Sergeant Standage ("Standage"); and "Jane Doe," who was alleged to be "a private person." (Complaint at 2-3.) Plaintiff purported to be seeking compensatory and punitive

1

1  damages.

2      Since plaintiff was proceeding in forma pauperis, the Court
3  screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2). After
4  careful review and consideration of the allegations of the
5  Complaint under the relevant standards, the Court found that,
6  although its allegations arguably were sufficient to state a claim
7  against defendant Mohammadi pursuant to the Fourth Amendment for
8  the use of excessive force, its allegations were insufficient to
9  state any other federal civil rights claim on which relief might be
10 granted against Mohammadi, or any federal civil rights claim on
11 which relief might be granted against any of the other named
12 defendants. Accordingly, on October 28, 2010, the Court issued a
13 32-page Order Dismissing Complaint with Leave to Amend ("Order
14 Dismissing Complaint"). Plaintiff was ordered, if he still wished
15 to pursue this action, to file a First Amended Complaint within
16 thirty (30) days of the Court's Order Dismissing Complaint,
17 remedying the deficiencies discussed therein.

18     On November 3, 2010, prior to the lapse of the 30-day period
19 for plaintiff to file a First Amended Complaint, defendants the
20 City, the LAPD, Mohammadi, and Standage filed an Answer to the
21 Complaint. In response, the Court issued a Minute Order on November
22 5, 2010, vacating its Order Dismissing Complaint, subject to the
23 following caveat. Since the Court had found that plaintiff's
24 allegations were insufficient to state any federal civil rights
25 claim against defendant "Jane Doe," and she had not filed an answer
26 to the Complaint, plaintiff's claims against "Jane Doe" remained
27 dismissed with leave to amend. To date, plaintiff has not amended
28 his allegations against "Jane Doe."

On November 15, 2010, plaintiff filed a Motion to Strike defendants' Answer ("MSA") and a Motion for Judgment on the Pleadings ("MJP"), to which defendants filed opposition on December 29, 2010. In a Report and Recommendation ("First R&R") issued on January 19, 2011, the Court recommended that both of plaintiff's motions be denied. The District Court adopted the recommendation and denied plaintiff's MSA and MJP on May 24, 2011.

Plaintiff filed a Motion for Summary Judgment on May 27, 2011, which the court denied on November 8, 2011.

The court now considers Defendants' Motion to Dismiss. After careful review and consideration of the allegations of the Complaint under the relevant standards, the Court finds for the reasons discussed hereafter that, although its allegations arguably are sufficient to state a claim against defendant Mohammadi pursuant to the Fourth Amendment for the use of excessive force, its allegations are insufficient to state any other federal civil rights claim on which relief may be granted against Mohammadi, or any federal civil rights claim on which relief may be granted against any of other named defendants.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS AND CLAIMS

**A.**   **Factual allegations**

On August 2, 2010, plaintiff was cited at Woodley Park for parking his "trailer coach and van" in a "No Parking Zone." (Complaint at 4.)  On August 7, 2010, plaintiff again parked his trailer and van next to a fence at Woodley Park.  (Id.)

Plaintiff noticed that a woman with several children was watching him around 6:00 p.m. that evening.  (Id. at 5.) Approximately 30 minutes later, several LAPD officers arrived and

1  "ordered plaintiff to put his dog inside the trailer." (<u>Id.</u>)
2  Plaintiff did so and asked the officers "what the problem was."
3  Officer Mohammadi "twisted plaintiff's left hand very violently to
4  plaintiff's back, then the other arm[,] and handcuffed him very
5  painfully." (<u>Id.</u> at 6.) Officer Mohammadi then asked for
6  plaintiff's name and returned to his police car, presumably to
7  check his computer for plaintiff's records. (<u>Id.</u>) Plaintiff was
8  informed that he "had been identified as the man who [had]
9  kidnapped a child at the park some half hour before." (<u>Id.</u>)
10 Plaintiff told the officers that he had been sitting under the
11 shade of a tree all day and that people involved in filming a movie
12 nearby, as well as others at a dog-training event, had seen him
13 sitting "all the day long at the same location." (<u>Id.</u> at 7.)

14    Two friends of plaintiff happened to pass by, and "plaintiff
15 shouted at them to approach and watch how the officers were abusing
16 him. Plaintiff also shouted at the dog-trainers and the movie
17 people to come and help him." (<u>Id.</u> at 7.) Plaintiff's friends
18 then told him that "the officers already knew that he was innocent
19 because they had received information that the child … had returned
20 to his family after getting lost." (<u>Id.</u>)

21    Plaintiff's handcuffs were "so excruciatingly tight they cut
22 into plaintiff's wrists … causing bleeding." (<u>Id.</u> at 7.)
23 Plaintiff "was protesting all that brutal treatment," and Officer
24 Mohammadi "wrestled him to the ground, downed his right knee on
25 plaintiff's jugular and the other knee on plaintiff's rib-cage."
26 (<u>Id.</u>) Another officer "immobilized plaintiff's legs by kneeling on
27 them and placing a very tight strap around and securing his knees."
28 (<u>Id.</u>)

4

Sergeant Standage then arrived, and plaintiff asked "her to set him free."  Sergeant Standage replied, "Say please."  (Id. at 7-8.)  Plaintiff refused, and Sergeant Standage told him that "he was going to be committed to a mental hospital hold for three days."  (Id. at 8.)  Three officers "hoisted plaintiff up … and pushed him sideways in their cruiser's cramped back seat."  Officer Mohammadi tightened the leg strap and kicked plaintiff's feet into the cruiser.  (Id.)

Plaintiff's passing friends took possession of his vehicles and his dog.  (Id. at 8.)  Plaintiff was transported to the Olive View Hospital Mental Health Unit.  Once there, Officer Mohammadi grabbed plaintiff's shirt and tore it and some chest hair while extracting plaintiff from the police car.  (Id.)  Plaintiff was "dragged" by his left arm into the "mental ward" by Officer Mohammadi.  His legs were "paralyzed by lack of blood flow" after being strapped for "three hours."  (Id.)

Dr. Gill interviewed plaintiff and asked questions about the "previous incident at the park."  (Id. at 8.)  Plaintiff asked to speak to a supervisor.  He spoke to Dr. Luzano at 11:00 p.m., and plaintiff asked that the doctor contact a friend.  Dr. Luzano did so and then informed plaintiff that he was going to be released, which he was at around midnight.  (Id. at 9.)

Plaintiff attempted to obtain a copy of the police report concerning the incident, but he was informed at the West Valley LAPD station that no police report existed.  He was provided with a list of only three of the six officers that plaintiff recalled being present.  (Id. at 9-10.)

On August 20, 2010, "plaintiff became to know [sic] the

5

identity" of Officer Mohammadi.  Plaintiff alleges that Officer Mohammadi is a Muslim and that it was well-known that plaintiff is an Israeli "national."  Accordingly, plaintiff alleges, Officer Mohammadi's "sardonic smile" after checking plaintiff's records was a "vengeful smile of a cowardly[] assassin."  (Id. at 11.)

According to the copy of the "Application for 72-Hour Detention for Evaluation and Treatment" pursuant to Cal. Wel. & Inst. Code § 5150 that plaintiff attached to his Complaint, Officer Mohammadi believed that plaintiff was "a danger to others" based on his "erratic behavior," and the fact that "he sleeps in a park w/ children around."  Plaintiff was called to the officer's attention when police received a radio call "for a kidnapping susp.[;] subt. matched the exact description of this kidnapping susp." (Complaint, Exh. 7 at 1.)  Further, Officer Mohammadi noted the following:  "Susp. appears to be delusional and has challenged PP several times.  Susp. challenged offr to physical altercation. Susp. has history of depression."  (Id.)

**B.   Plaintiff's list of incidents and actions**

Plaintiff lists the following "unlawful arrests, jailings, prosecutions, continuous harassments, retaliations, persecutions, tickets, etc." as being relevant to his allegations (see Complaint at 4; Exh. 1 "Robert Garber's 'Criminal' History"):

May 27, 1989:    LAPD detention: Booking No. 001427984;

February 23, 1996:  Arrest, case dismissed:  Van Nuys Superior Court Case No. 6PN02097;

October 7, 2003: Vehicle  parking citation, dismissed: Malibu Court Case No. MA0191701;

May 17, 2005:    Assault  against  plaintiff by private

6

1                           individual, plaintiff was not arrested,

2                           charges not filed against attacker: Case

3                           RD#50917115;

4  August 30, 2005:  Acquitted after trial: Superior Court Case

5                           No. 5PN05498 (<u>see</u> Federal Case No. CV 06-

6                           6232-DDP (RNB));

7  November 6, 2006:  Acquitted by jury of "the arresting

8                           charges" of brandishing a weapon, but

9                           convicted on two other counts:

10                          Superior Court Case No. 6PY07114 (<u>see</u>

11                          Federal Court Case No. CV 07-07254-DDP

12                          (RNB));

13 April 19, 2007:  Dismissed, parking citation 1041566105 and

14                          citation 3130444203;

15 June 3, 2007:  Arrested for living in trailer on street,

16                          dismissed: LAPD citation 952203, Superior

17                          Court Case No. 7PY06254 (<u>see</u> Federal Court

18                          Case No. CV 08-03585-DDP (RNB));

19 June 12, 2007:  Cited for drinking root-beer in public park,

20                          dismissed: citation 81011

21 June 19, 2007:  Dismissed after corrections to vehicle:

22                          LAPD citation 8685686;

23 July 12, 2007:  "Reversed": parking citation 1044517946;

24 July 18, 2008:  Cited for living in trailer in street,

25                          dismissed: LAPD citation 429455;

26 August 4, 2008:  General Services Dept. Police (not

27                          defendants herein) handcuffed plaintiff

28                          and "put him to his knees" for an hour and

1                         a half while investigating allegation of
2                         dog abuse at plaintiff's trailer, no
3                         arrest or citation issued (<u>see</u> Federal
4                         Court Case No. CV 09-5657-DDP (RNB)
5   July 28, 2010:        Cited for living in trailer, arrest
6                         threatened, arraigned September 13, 2010: Case
7                         157274;
8   August 2, 2010:       Cited by General Services Dept. Police for
9                         parking in no parking zone, pending: citation
10                        1078846952;
11  August 7, 2010:       Incident herein;
12  September 8, 2010:     Won a small claims award against City:
13                        Case LAV 10V02114; and
14  September 16, 2010:    Cited by General Services Dept. Police
15                        for parking parallel, pending: citation
16                        1089295782.

**C.   <u>Plaintiff's claims</u>**

Plaintiff purports to state the following seven "causes of action" in his Complaint and purports to allege each cause of action against "all defendants," including "Jane Doe." (<u>See</u> Complaint at 13-19.)

1.   In his first cause of action entitled "Violation of Civil Rights, for Deprivation of Civil Rights," plaintiff cites the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, as well as <u>Monell v. New York City Dep't of Social Services</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Plaintiff alleges therein that "Jane Doe," with "gross negligence" and "deliberate indifference," "recklessly made a 911 call falsely 'identifying'

8

plaintiff" as having kidnapped her child.  Plaintiff further
alleges that the other defendants acted "knowingly, with gross
negligence, maliciously, and in deliberate indifference" and
permitted a "pattern and practice, custom and usage" of: arresting
people without probable cause, filing false police reports, not
filing police reports, conducting deficient investigations and
supervision, and "brutality, bias and discrimination against
homeless, aliens, and, as in this case, religious discrimination."
He also alleges a violation of his rights to "be confronted with
the witnesses against him [and] to have compulsory process for
obtaining witness [sic] in his favor under the Sixth Amendment."
Plaintiff also alleges a "pattern and practice" of violations of
his "rights as an alien, a member of the homeless class and an
[I]sraeli national."  (See Complaint at 13-14.)

2.   Plaintiff cites no legal basis for his second cause of
action entitled "Harassment, Retaliation for Deprivation of Civil
rights."   However, he claims therein that he was "deprived once
more of his liberty, liberty to travel and of being free from
mental oppression, by being subjected to continuous unlawful
actions/charges brought by the LAPD with the malicious intent to
oppress plaintiff."  Plaintiff alleges that the LAPD "has a long
history of institutional custom of harassing homeless people," and
that the "custom" has been "allowed to go on by the Office of the
City Attorney" in particular with respect to plaintiff as
"retaliation of [sic] plaintiff's several complaints to the State
Bar against deputies [sic] City Attorney [sic]."  Plaintiff cites
his attached list of prior arrests and citations, the City
Attorney's failure on other occasions to file charges against

1     people who had attacked plaintiff, and his allegation that LAPD
2     officers have a pattern of "nightly harassments of plaintiff by …
3     turning on their sirens only when passing by plaintiff's trailer at
4     approximately 2 to 2:30 a.m." (See Complaint at 14-15.)

5         3.   In his third cause of action entitled "Discrimination,
6     for deprivation of Civil Rights," plaintiff cites the First,
7     Fourth, Fifth, and Fourteenth Amendments.  Plaintiff alleges
8     therein that the LAPD has a history of discrimination against
9     homeless people through "intimidation, excessive use of force,
10    killings, jailings, impoundment of vehicles." Plaintiff further
11    alleges that he was subjected to discrimination "under the First
12    Amendment of [sic] freedom of religion" because Mohammadi "is a
13    [M]uslim, plaintiff an [I]sraeli national." Plaintiff alleges that
14    he "is known everywhere as an [I]sraeli." Plaintiff also alleges
15    that LAPD officers have "secret codes giving them confidential
16    information by just tapping their computers." (See Complaint at
17    15-16.)

18         4.   In his fourth cause of action entitled "Conspiracy, for
19    Deprivation of Civil Rights," plaintiff cites the First, Fourth,
20    Fifth, and Fourteenth Amendments, as well as 42 U.S.C. §§ 1983,
21    1985(3), and 1986.  Plaintiff alleges therein that defendants
22    conspired to "frame, arrest, imprison, and knowingly cause injuries
23    to plaintiff." Plaintiff further alleges that the actions of
24    defendants violated his rights to "due process, liberty, and
25    privacy interests, and freedom of religion."  In addition,
26    plaintiff alleges that defendants acted "in furtherance of an
27    unlawful pattern and practice, custom and usage, and was therefore
28    [sic] a conspiracy under color of law in violation of plaintiff's

constitutional rights." (See Complaint at 16-17.)

5.   In his fifth cause of action entitled "Unreasonable Seizure, for Deprivation of Civil Rights," plaintiff cites the Fourth and Fourteenth Amendments. Plaintiff alleges therein that "Jane Doe" recklessly and falsely identified plaintiff as the man who kidnapped her child, and that her action caused plaintiff to be "seized, arrested, and imprisoned." He further alleges that Officer Mohammadi and Sergeant Standage "should have released plaintiff as soon as they were notified that Jane Doe's child" had returned, rather than "arresting him and trying to commit him." He also alleges that he was deprived of his right to "privacy," due process and liberty interests, and that defendants acted "without any probable cause." (See Complaint at 17-18.)

6.   In his sixth cause of action entitled "Malicious Prosecution for Deprivation of Civil Rights," plaintiff cites the First, Fourth, Fifth, Sixth, and Fourteenth Amendments, as well as 42 U.S.C. §§ 1983, 1985(3), and 1986. Plaintiff alleges therein that defendants "initiated a malicious prosecution" against him, and, therefore, defendants "are liable to plaintiff under 42 U.S.C. §§ 1983, 1985(3), and 1986." Plaintiff further alleges that the fact that he was released from the hospital that same night upon a finding that "there was no reason to commit him" constitutes "the 'good termination' requirement of the malicious prosecution [sic]." (See Complaint at 18-19.)

7.   Plaintiff cites no legal basis for his seventh cause of action entitled "Personal Injury, Excessive Use of Force, for Deprivation of Civil Rights." Plaintiff alleges therein that an earlier arrest in 2005 resulted in plaintiff being diagnosed with

"major depression," and that the LAPD is aware of this fact. Plaintiff further alleges that Officer Mohammadi "directly used excessive force" against plaintiff "knowing him to be innocent," and that plaintiff "sustained several blows to his head, neck, rib-cage, legs, arms, and both hands." Plaintiff also alleges that Sergeant Standage "aided, abetted and directed" Officer Mohammadi in deciding to commit plaintiff. (See Complaint at 19-20.)

### DISCUSSION

**A.** **Plaintiff's allegations fail to comply with the pleading requirements of Federal Rule of Civil Procedure 8.**

Pursuant to Fed. R. Civ. P. 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Further, Rule 8(d)(1) provides: "Each allegation must be simple, concise, and direct." As the Supreme Court has held, Rule 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556. Although the Court must construe a pro se plaintiff's pleadings liberally, plaintiff nonetheless must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. See, e.g., Brazil v. United States Dep't of the Navy, 66 F.3d 193, 199 (9th Cir. 1995); McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991). If plaintiff fails to clearly and concisely set forth allegations sufficient to provide defendants with notice of which defendant is being sued on which theory and what relief is being sought against them, the complaint fails to comply with Rule 8. See, e.g., McHenry v. Renne, 84 F.3d

12

1  1172, 1177-79 (9th Cir. 1996); <u>Nevijel v. Northcoast Life Ins. Co.</u>,
2  651 F.2d 671, 674 (9th Cir. 1981).  Moreover, failure to comply
3  with Rule 8(a) constitutes an independent basis for dismissal of a
4  complaint that applies even if the claims in a complaint are not
5  found to be wholly without merit.   <u>See</u> <u>McHenry</u>, 84 F.3d at 1179;
6  <u>Nevijel</u>, 651 F.2d at 673.

7      Here, plaintiff's Complaint fails to set forth a minimum
8  factual and legal basis for his claims that is sufficient to give
9  each defendant fair notice of the number of claims plaintiff is
10  purporting to raise against each defendant, the factual basis for
11  each claim, the legal basis for each claim, and which claims
12  plaintiff is purporting to raise against which defendant.

13      First, because plaintiff incorporates all of his factual
14  allegations and his preceding "causes of action" into each
15  subsequent cause of action, it is not clear to the Court what
16  federal civil rights claims plaintiff is purporting to raise
17  against which defendant(s).  In addition, within most of his seven
18  causes of action, plaintiff cites numerous provisions of the
19  federal constitution, as well as federal law, as the bases for the
20  cause of action.

21      Further, plaintiff purports to raise each of his "causes of
22  action" against all defendants, although the factual references
23  within each "cause of action" clearly do not apply to all
24  defendants.  For example, plaintiff's seventh "cause of action" is
25  purportedly based on the "excessive use of force," but the factual
26  allegations set forth in the Complaint regarding the use of force
27  appear to pertain only to individual defendant Mohammadi, and
28  clearly are not relevant to "Jane Doe," whom plaintiff does not

1  allege to have been present during his encounter with the LAPD
2  officers.

3      In addition, the allegations in his seven separate "causes of
4  action" appear to the Court to be highly duplicative.   It is
5  unclear to the Court if plaintiff's intention is to raise multiple
6  claims under multiple legal theories based on the same factual
7  allegations, or if he is purporting to raise separate claims based
8  on other factual allegations that are not clearly set forth.

9      Moreover, the legal basis for many of plaintiff's "causes of
10 action" are entirely unclear to the Court because plaintiff's
11 citations frequently are inapplicable to the claim plaintiff
12 references in the title of that "cause of action."[1]

13     Construing plaintiff's allegations liberally and affording
14 plaintiff the benefit of any doubt, the Court finds that
15 plaintiff's Complaint fails to allege sufficient "factual content
16 that allows the [C]ourt to draw the reasonable inference that

17

18 _____
       [1]    For example, the Court notes that the Sixth Amendment is
19 applicable only in criminal prosecutions.   See, e.g., Williams v.
   Gorton, 529 F.2d 668, 671 (9th Cir. 1976).   The Complaint contains
20 no factual allegations in support of any claim that defendants
   violated plaintiff's Sixth Amendment rights in any criminal
21 prosecution, and indeed it is inconceivable to the Court how LAPD
   officers, the City, or the LAPD could violate plaintiff's Sixth
22 Amendment rights.   Further, to the extent that plaintiff is
   purporting to raise a claim pursuant to the Free Exercise Clause of
23 the First Amendment (see Complaint at 14, 16), he sets forth no
   allegations pertaining to any burden placed by any defendant on
24 plaintiff's free exercise of his religion.   Additionally, to the
   extent that plaintiff is purporting to allege a claim under the
25 First Amendment for retaliation, his only possibly relevant
   allegation pertains to complaints he filed with the State Bar is in
26 connection with the City Attorney's Office (see id. at 5), and no
   factual allegations raise any inference that any Deputy City
27 Attorney was involved in this incident, nor are any Deputy City
28 Attorneys named as defendants herein.

                              14

1   [each] defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129
2   S. Ct. at 1949.

3        The Court therefore finds that the Complaint does not comply
4   with Rule 8 because (a) it does not contain a "short and plain
5   statement" of plaintiff's claims showing that he is entitled to
6   relief,   and   (b)   its   allegations   are   insufficient   to   meet
7   plaintiff's threshold requirement of providing each defendant with
8   notice of their allegedly wrongful acts.

9   **B.   <u>Plaintiff's allegations arguably are sufficient to state a</u>**
10      **<u>claim against Officer Mohammadi for the excessive use of force</u>**
11      **<u>pursuant to the Fourth Amendment, but are insufficient to</u>**
12      **<u>state any other Fourth Amendment claim.</u>**

13           1.   <u>Plaintiff's allegations arguably are sufficient to state</u>
14                <u>an excessive force claim pursuant to the Fourth Amendment</u>
15                <u>against Officer Mohammadi, but are insufficient to state</u>
16                <u>an excessive force claim against Sergeant Standage.</u>

17       The Fourth Amendment "guarantees citizens the 'right to be
18   secure in their persons … against unreasonable … seizures.'" <u>See</u>
19   <u>Graham v. Connor</u>, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d
20   443 (1989) (alterations in original); <u>see also Tennessee v. Garner</u>,
21   471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985); <u>Robinson v.</u>
22   <u>Solano County</u>, 278 F.3d 1007, 1009 (9th Cir. 2002) (en banc).  Such
23   claims  are  "analyzed  under  the  Fourth  Amendment's  'objective
24   reasonableness standard.'" <u>Saucier v. Katz</u>, 533 U.S. 194, 204, 121
25   S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (citing <u>Graham</u>, 490 U.S. at
26   388).  But the "reasonableness" of an officer's actions "must be
27   judged from the perspective of a reasonable officer on the scene,
28   rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S.

at 396.  The determination of whether an officer's use of force was "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." <u>Graham</u>, 490 U.S. at 396 (internal quotations omitted); <u>see also Deorle v. Rutherford</u>, 272 F.3d 1272, 1279 (9th Cir. 2001) (as amended) ("the force which is applied must be balanced against the need for that force").  Such an analysis requires "careful attention to the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396; <u>see also Garner</u> 471 U.S. at 8-9 (whether a seizure is reasonable under the Fourth Amendment is judged by the "totality of the circumstances").  Moreover, the Supreme Court has held that, in determining whether the force used to affect a particular seizure is "reasonable" under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Graham</u>, 490 U.S. at 397.

Here, as set forth above, plaintiff has alleged that Officer Mohammadi "twisted plaintiff's left hand very violently to plaintiff's back, then the other arm[,] and handcuffed him very painfully." (Complaint at 6.)  Further, plaintiff alleges that his handcuffs were "so excruciatingly tight they cut into plaintiff's wrists … causing bleeding." (<u>Id.</u> at 7.)  When plaintiff protested "all that brutal treatment," Officer Mohammadi "wrestled him to the

ground, downed his right knee on plaintiff's jugular and the other knee on plaintiff's rib-cage." (<u>Id.</u>) Another officer "immobilized plaintiff's legs by kneeling on them and placing a very tight strap around and securing his knees." (<u>Id.</u>) Based on the severity of the crime of which plaintiff was suspected, as well as the inference of plaintiff's active resistance reasonably drawn from the factual allegations, it appears to the Court that, from the perspective of a reasonable officer on the scene, plaintiff reasonably could have posed an immediate threat to the safety of the officers or others. Accordingly, the officers' use of some force was "reasonable" under the Fourth Amendment. However, because plaintiff is proceeding <u>pro se</u> and the Court must construe plaintiff's factual allegations in the light most favorable to plaintiff, it appears to the Court that plaintiff's allegations that Officer Mohammadi used more force than may have been objectively reasonable under the totality of the circumstances arguably are sufficient to state a Fourth Amendment claim against Mohammadi that is plausible on its face.

With respect to Sergeant Standage, however, plaintiff sets forth no factual allegations that Standage used any force against plaintiff, or that she was present on the scene during the application of any force by any other LAPD officer. To the contrary, plaintiff alleges that Sergeant Standage arrived after plaintiff had been immobilized on the ground and after the leg strap had been applied. Plaintiff merely alleges that Sergeant Standage refused his request to "set him free." (Complaint at 7-8.) Plaintiff then alleges that he was "hoisted" by three other officers and "pushed" into the police car, and that Officer

Mohammadi "kicked plaintiff's feet into the cruiser" while Standage
was present, but none of those alleged actions are objectively
unreasonable when judged under the totality of the circumstances
and from the perspective of a reasonable officer on the scene.
(See id. at 7-8.)   Accordingly, the Court finds that the
allegations of the Complaint are insufficient to state a federal
civil rights claim against defendant Standage pursuant to the
Fourth Amendment arising from the excessive use of force.

2.   Plaintiff's allegations are insufficient to state a
Fourth Amendment claim against any named defendant
arising from plaintiff's arrest or detention.

The Fourth Amendment accords the right to protection from
arrest without probable cause.   See United States v. Watson, 423
U.S. 411, 417, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976).
Consequently, an officer violates a person's constitutional rights
when he arrests a person without probable cause.   See, e.g., Barry
v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990); McKenzie v. Lamb, 738
F.2d 1005, 1007 (9th Cir. 1984).   "Probable cause exists where the
facts and circumstances within the officers' knowledge and of which
they had reasonably trustworthy information are sufficient in
themselves to warrant a man of reasonable caution in the belief
that an offense has been or is being committed by the person to be
arrested."   Dunaway v. New York, 442 U.S. 200, 208 n. 9, 99 S. Ct.
2248, 60 L. Ed. 2d 824 (1979); see also Michigan v. DeFillippo, 443
U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed.2d 343 (1979).   "Probable
cause is an objective standard and the officer's subjective
intention in exercising his discretion to arrest is immaterial in
judging whether his actions were reasonable."   John v. City of El

18

<u>Monte</u>, 515 F.3d 936, 940 (9th Cir. 2008); <u>United States v. Lopez</u>, 482 F.3d 1067, 1072 (9th Cir.), <u>cert. denied</u>, 552 U.S. 936 (2007). Additionally, the determination of whether probable cause existed is based only on the information known to the officers at the time of making an arrest.  <u>See Devenpeck v. Alford</u>, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004) ("Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); <u>see also John</u>, 515 F.3d at 942 ("the probable cause inquiry is an objective one: whether the information [the officer] had when he made the arrest could have led a reasonable officer to believe that John had committed an offense").

Here, accepting plaintiff's allegations as true, LAPD officers informed plaintiff that he had "been identified as the man who kidnapped a child at the park some [one half] hour before," and the arresting officer noted that plaintiff "matched the exact description of [the] kidnapping susp." (Complaint at 6, 12A, Exh. 7 at 1.)  Plaintiff admits to having spent the entire day in the park. (Complaint at 4-5, 7.)  Additionally, plaintiff alleges that he shouted at two friends to "watch how the officers were abusing him," shouted at other unrelated individuals in the park to "come and help him," and "protested" the "brutal treatment" he received. (<u>Id.</u> at 7.)  According to the information recorded by Officer Mohammadi on plaintiff's Exhibit 7 (which plaintiff quoted in the Complaint), the officer initiated the "Application for 72-Hour Detention" because of plaintiff's erratic behavior, the officer's belief that plaintiff was sleeping in the park where children played, the fact that plaintiff appeared to be "delusional" and had

19

1   "challenged" an officer to a "physical altercation," and
2   plaintiff's admitted history of depression. (See Complaint at 12A,
3   Exh. 7 at 1.) Based on plaintiff's own description of his conduct
4   and the rational inferences to be drawn therefrom, along with the
5   notes made by Officer Mohammadi on the Application for 72-Hour
6   Detention, the information known at the time by Officer Mohammadi
7   was sufficient for a reasonable officer initially to believe that
8   plaintiff may have committed the reported kidnapping and then to
9   "believe or entertain a strong suspicion" that plaintiff posed a
10  danger to others.   Under California law, this reasonable belief
11  constitutes probable cause to initiate a detention pursuant to Cal.
12  Welf. & Inst. Code § 5150.   See Heater v. Southwood Psychiatric
13  Center, 42 Cal. App. 4th 1068, 1080, 49 Cal. Rptr. 2d 880 (1996);
14  People v. Triplett, 144 Cal. App. 3d 283, 287-88, 192 Cal. Rptr.
15  537 (1983); see also Bias v. Moynihan, 508 F.3d 1212, 1220 (9th
16  Cir. 2007) ("Probable cause exists under [Cal. Welf. & Inst. Code]
17  section 5150 if facts are known to the officer 'that would lead a
18  person of ordinary care and prudence to believe, or to entertain a
19  strong suspicion, that the person detained is mentally disordered
20  and is a danger to himself or herself.'").   To the extent that
21  plaintiff is purporting to allege that Officer Mohammadi detained
22  him based on plaintiff's homeless status or because Mohammadi knew
23  at the time that plaintiff was of Israeli nationality, Mohammadi's
24  subjective reasons are not relevant to the Court's determination of
25  the existence of probable cause at the time that Officer Mohammadi
26  detained plaintiff for kidnapping or initiated the application for
27  a detention of plaintiff for evaluation and treatment pursuant to
28  Cal. Welf. & Inst. Code § 5150.

1   The Court therefore finds that the allegations of the
2  Complaint are insufficient to state a Fourth Amendment claim
3  against any of the named defendants arising from plaintiff's arrest
4  or detention.

5      3. Defendant Mohammadi is not entitled to qualified immunity
6  at this stage of the proceedings

7      Defendant Mohammadi argues that he is entitled to qualified
8  immunity because there was probable cause for Plaintiff's arrest,
9  even when the Complaint is construed in the light most favorable to
10 the Plaintiff.

11     In assessing a defendant's qualified immunity defense, the
12 court first determines "whether the facts alleged in the complaint,
13 viewed in the light most favorable to Plaintiff[], demonstrate"
14 that the defendant's conduct violated the plaintiff's rights. Moss
15 v. U.S. Secret Service, 572 F.3d 962 (9th Cir. 2009). "[T]he next
16 step is to determine whether the right at issue was clearly
17 established at the time of the violation." Id. "[E]ven if the
18 violated right was clearly established, the Saucier [v. Katz, 533
19 U.S. 194, 200 (2001)] court recognized that it may be difficult for
20 a police officer fully to appreciate how the legal constraints
21 apply to the specific situation he or she faces. Under such a
22 circumstance, if the officer's mistake as to what the law requires
23 is reasonable, ... the officer is entitled to the immunity
24 defense." Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th
25 Cir. 2007)(internal citations and quotation marks omitted).

26     Taking Plaintiff's allegations as true, there is no evidence
27 that would justify handcuffing Plaintiff so tightly that they
28 caused bleeding, wrestling him to the ground and placing his knees

21

on Plaintiff's jugular and rib cage, or placing a tight strap around his knees.  (Compl. at 7.)  The court concludes that a reasonable officer in Mohammadi's position would have known that to keep Plaintiff "in handcuffs that were so tight that they caused [him] unnecessary pain violated [his] Fourth Amendment right to be free from an unreasonable seizure." <u>Meredith v. Erath</u>, 342 F.3d 1057, 1063 (9th Cir. 2003). <u>See,e.g.</u> <u>Palmer v. Sanderson</u>, 9 F.3d 1433, 1434-36 (9th Cir. 1993)(holding that an officer who, during a traffic stop, jerked the plaintiff out of his car, handcuffed him extremely tightly, forcefully shoved him into the back of a patrol car, and refused to loosen his handcuffs was not entitled to qualified immunity because no reasonable officer would have thought this conduct was constitutional); <u>Hansen v. Black</u>, 885 F.2d 642, 645 (9th Cir. 1989)(holding that police officers used excessive force when they roughly handcuffed plaintiff thereby injuring her wrist and arm after she tried to prevent them from collecting evidence and called one of the officers a "son of a bitch").

Defendant Mohammadi presents a declaration contesting Plaintiff's allegations regarding the use of force.  (Mohammadi Decl. ¶¶ 3, 8-9,13-14.)  However, at the stage of the motion to dismiss, Plaintiff's factual allegations must be accepted as true. Defendant Mohammadi's assertion that he had probable cause to arrest Plaintiff does not go to the question of whether the force he used in effectuating an otherwise lawful arrest was excessive.

Plaintiff has stated a claim against Defendant Mohammadi for the use of excessive force.  The court finds that Plaintiff's right to be free from excessive force, as alleged by Plaintiff, was clearly established at the time of his arrest, whether or not there

1   was probable cause for such arrest.  Therefore, the court finds

2   that Defendant Mohammadi is not entitled to qualified immunity.

3   **D.   Plaintiff's allegations are insufficient to state any federal**

4   **civil rights claim against any of the named defendants**

5   **pursuant to the Fifth and Fourteenth Amendments.**

6        1.    Plaintiff's allegations are insufficient to state any

7              claim under the Equal Protection Clause.

8        "The Equal Protection Clause of the Fourteenth Amendment

9   commands that no State shall 'deny to any person within its

10  jurisdiction the equal protection of the laws,' which is

11  essentially a direction that all persons similarly situated should

12  be treated alike." City of Cleburne v. Cleburne Living Center, 473

13  U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (quoting

14  Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786

15  (1982)).  In order to state an equal protection claim based on the

16  allegedly selective enforcement of a law, plaintiff must "show that

17  the law is applied in a discriminatory manner or imposes different

18  burdens on different classes of people." Freeman v. City of Santa

19  Ana, 68 F.3d 1180, 1187 (9th Cir. 1995).  To do so, plaintiff must

20  "identify a 'similarly situated' class against which plaintiff's

21  class can be compared." Id.   Then, if the alleged selective

22  enforcement "does not implicate a fundamental right or a suspect

23  classification, the plaintiff can establish a 'class of one' equal

24  protection claim by demonstrating that [he] 'has been intentionally

25  treated differently from others similarly situated and that there

26  is no rational basis for the difference in treatment.'"  Squaw

27  Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004)

28  (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.

Ct. 1073, 145 L. Ed. 2d 1060 (2000) (recognizing an equal protection violation where ordinance targeted a single individual on basis that state action was arbitrary and irrational)); <u>see also</u> <u>Jackson v. Burke</u>, 256 F.3d 93, 96 (2d Cir. 2001) (a class-of-one plaintiff must show that the discriminatory treatment "was intentionally directed just at him, as opposed … to being an accident or a random act").

Here, even construing plaintiff's allegations liberally, he altogether fails to allege the existence of any "similarly situated" individual, let alone that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Squaw Valley Dev. Co.</u>, 375 F.3d at, 944. Moreover, "[h]omeless persons are not a suspect class." <u>See</u> <u>Joel v. City of Orlando</u>, 232 F.3d 1353, 1357 (11th Cir. 2000), <u>cert. denied</u>, 532 U.S. 978 (2001); <u>accord</u> <u>D'Aquanno v. Gallagher</u>, 50 F.3d 877, 879 n. 2 (11th Cir. 1995) (noting that the homeless plaintiffs "do not constitute a suspect class"); <u>Kreimer v. Bureau of Police</u>, 958 F.2d 1242, 1269 n. 36 (3rd Cir. 1992) ("as the homeless do not constitute a suspect class, the rules need only survive the lowest standard of review for equal protection purposes"); <u>Davison v. City of Tuscon</u>, 924 F. Supp. 989, 994 (D. Ariz. 1996) ("no court has ever held the homeless to be a suspect class"); <u>Joyce v. City and County of San Francisco</u>, 846 F. Supp. 843, 859 (N.D. Cal. 1994) (noting that, even if homeless plaintiff could "prove an intent to discriminate against the homeless," the challenged program might survive constitutional scrutiny because it was not aimed at a suspect

classification).[2]

Therefore, to the extent that plaintiff is purporting to allege that defendants singled him out as a suspect in the reported kidnapping or decided to detain him because he is a homeless person, he must demonstrate that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See Squaw Valley Dev. Co., 375 F.3d at 944. As the Court informed plaintiff in connection with one of plaintiff's prior federal lawsuits (Case No. CV 08-4208-DDP (RNB)), plaintiff's allegations of "harassment" by the police altogether fail to even give rise to a reasonable inference that any LAPD officer intentionally arrested or ticketed plaintiff because he was homeless and failed to arrest or ticket a similarly-situated person who was not homeless. Rather, as noted in the exhibits attached to plaintiff's Complaint and as plaintiff alleges he was informed during the incident, plaintiff matched the "exact description" of a man who had been reported to the police as having kidnapped a child in the park in which plaintiff admits he had spent the entire day. (Complaint at 6, 12A, Exh. 7 at 1.) Accordingly, even accepting as true the material facts as alleged by plaintiff, the police had a rational basis to approach plaintiff in connection with the reported kidnapping.

Similarly, plaintiff's allegations that the LAPD have a

---

[2]    Although the Supreme Court has not directly answered this question, it has ruled that classifications based on wealth or housing are not "suspect." See Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 457-58, 108 S. Ct. 2481, 101 L. Ed. 2d 399 (1988); Lindsey v. Normet, 405 U.S. 56, 73-74, 92 S. Ct. 862, 31 L. Ed. 2d 36 (1972).

1  "pattern and practice" of brutality, bias and discrimination
2  against homeless" (Complaint at 13), and that the "LAPD has a long
3  history of institutional custom of harassing homeless people" (id.
4  at 15) are not sufficient to state an Equal Protection claim.
5  Lacking any factual support, the allegations are nothing more than
6  speculation and are insufficient to meet plaintiff's obligation to
7  state the grounds for his claim. See Twombly, 127 S. Ct. at 1964-
8  65. Although detailed facts are not required, plaintiff's
9  allegations must be sufficient to "give the defendant fair notice
10 of what the … claim is and the grounds upon which it rests." See
11 Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L.
12 Ed. 2d 1081 (2007) (alteration in original, internal quotation
13 marks omitted); see also Alvarez v. Hill, 518 F.3d 1152, 1157 (9th
14 Cir. 2008) (pro se plaintiff must allege "factual allegations
15 establishing a plausible entitlement to relief") (internal
16 quotation marks omitted). Far from alleging facts that establish
17 the grounds for a plausible entitlement to relief, plaintiff merely
18 asserts that such a "history" and "pattern" exists. To the extent
19 that plaintiff may be purporting to base his allegations of a
20 "pattern" of "harassment" on his attached Exhibit 1, his list of
21 encounters with LAPD officers, a Malibu Sheriff's Deputy, the Los
22 Angeles City Attorneys' Office, and the General Services Department
23 Police (at least one of which resulted in plaintiff's conviction
24 according to plaintiff's own factual allegations) that have
25 occurred over a twenty-year time period raises no inference of any
26 practice of intentional discriminatory treatment by the LAPD
27 against the homeless. Not only does plaintiff's list of incidents
28 include disparate actions by unrelated agencies, ranging from a

26

vehicle citation by a sheriff in Malibu in 1996, to an assault against plaintiff by a private individual in 2005, to the most recent incident in September 2010 in which "General Serv. Dpt. Police" officers are alleged to have improperly cited plaintiff for parking his "41 ft long vehicles parallel" and issued a warning about a cracked windshield (see Plaintiff's Exh. 1.), but all of the incidents involve plaintiff.  Accordingly, such a list of disparate and unconnected incidents involving a variety of agencies raises no inference that plaintiff was intentionally treated differently by the LAPD or any named defendant because he was homeless.

Further, to the extent that plaintiff is purporting to state an Equal Protection claim based on his religion or his national origin, plaintiff fails to set forth any facts to raise any inference that any defendant intentionally discriminated against him based on his membership in a protected class. See Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998) ("claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent"). Plaintiff's mere speculative allegation (even accepted as true) that Officer Mohammadi is a Muslim, and his unsupported assertion that Officer Mohammadi would have known of plaintiff's religion or national origin because "plaintiff is known everywhere as an [I]sraeli," or because the officer discovered these facts based on information Mohammadi learned when checking his computer (see Complaint at 11, 16), are insufficient to raise an inference that any defendant acted with an intent to discriminate against

27

1  plaintiff based on the fact that plaintiff is of Israeli
2  nationality.

3        2.   Plaintiff's allegations also are insufficient to state
4             any claim under the Due Process Clause.

5        To the extent that plaintiff may be purporting to state a
6  separate substantive due process claim, it is unclear to the Court
7  what legal theory or factual basis such a claim may be premised
8  upon. (See Complaint ¶¶ 43 (right to "have due process of law and
9  the equality of the laws"), 45 (deprived of his "liberty"), 52
10 (homeless people are deprived of their right "to have proper due
11 process and the equality of the laws"), 56 (violated his "due
12 process, liberty, and privacy interests"), 63 (actions of defendant
13 abused his "due process and liberty interests").)  Rather, it
14 appears to the Court that any substantive due process claim that
15 plaintiff may be purporting to raise is foreclosed by his other
16 claims alleging the same violation(s). See, e.g., Graham, 490 U.S.
17 at 395 ("Because the Fourth Amendment provides an explicit textual
18 source of constitutional protection against [certain] … physically
19 intrusive governmental conduct, that Amendment, not the more
20 generalized notion of 'substantive due process,' must be the guide
21 for analyzing these claims."); Hufford v. McEnaney, 249 F.3d 1142,
22 1151 (9th Cir. 2001) ("If, in a § 1983 suit, the plaintiff's claim
23 can be analyzed under an explicit textual source of rights in the
24 Constitution, a court should not resort to the more subjective
25 standard of substantive due process." (internal citation omitted)).
26 Moreover to the extent that plaintiff may be purporting to state a
27 claim under the Fourteenth Amendment based on his allegations that
28 defendants falsely arrested plaintiff, plaintiff has no substantive

1   right under the Due Process Clause to be free from criminal arrest

2   or prosecution without probable cause.  See Albright v. Oliver, 510

3   U.S. 266, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (declining

4   to recognize a "substantive right under the Due Process Clause of

5   the Fourteenth Amendment to be free from criminal prosecution

6   except upon probable cause").

7          3.    Plaintiff's allegations are insufficient to state a

8                federal civil rights claim for malicious prosecution.

9          In order to prevail on a § 1983 claim of malicious

10  prosecution, plaintiff must show the defendants prosecuted him: (1)

11  with malice; (2) without probable cause; and (3) "for the purpose

12  of   denying   [him]   equal   protection   or   another   specific

13  constitutional right."  See Awabdy v. City of Adelanto, 368 F.3d

14  1062, 1066 (9th Cir. 2004) (alteration in original) (quoting

15  Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir.1995));

16  see also Lassiter v. City of Bremerton, 556 F.3d 1049, 1054-55

17  (9th Cir. 2009) ("[P]robable cause is an absolute defense to

18  malicious prosecution.").   Malicious prosecution claims may be

19  brought against any person who has "wrongfully caused the charges

20  to be filed."  Awabdy, 368 F.3d at 1066 (citing Galbraith v. County

21  of Santa Clara, 307 F.3d 1119, 1126-27 (9th Cir. 2002)).  Plaintiff

22  must establish a termination of the underlying proceedings "in such

23  a manner as to indicate his innocence."  Awabdy, 368 F.3d at 1068.

24         Here, accepting plaintiff's allegations as true, no criminal

25  charges were brought against plaintiff in connection with the

26  August 2010 incident in Woodley Park.  To the extent that a cause

27  of action for malicious prosecution under § 1983 may be premised on

28  an officer's initiation of a detention pursuant to Cal. Welf. &

Inst. Code § 5150, plaintiff has failed to show that defendants detained him with malice and without probable cause, or for the purpose of denying him any constitutional right.  To the contrary, as the Court found above, even accepting as true plaintiff's allegations and affording plaintiff the benefit of any doubt, as alleged by plaintiff, the information available at the time of his detention was sufficient for a reasonable officer to "believe or entertain a strong  suspicion" that plaintiff posed a danger to others.  Because this was sufficient to constitute probable cause pursuant to Cal. Welf. & Inst. Code § 5150, plaintiff cannot show that any defendant initiated his detention without probable cause. Accordingly, plaintiff's allegations are insufficient to state a federal civil rights claim for malicious prosecution against any defendant.

**D.   Plaintiff's allegations are insufficient to state a claim for relief based on any alleged "conspiracy."**

Plaintiff alleges that defendants conspired "to frame, arrest, imprison and knowingly cause injuries to plaintiff" and that defendants acted "in furtherance of an unlawful pattern and practice, custom and usage, and was therefore [sic] a conspiracy under color of law in violation of plaintiff's constitutional rights." (Complaint at 17.)  Plaintiff cites 42 U.S.C. §§ 1983, 1985(3), and 1986.  (Id. at 17, 19.)

In order to state a claim for conspiracy under §1983, plaintiff must "demonstrate the existence of an agreement or meeting of the minds 'to violate constitutional rights.'"  Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir.  2010) (quoting Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th

30

Cir. 1999)), petition for cert. filed (Sep. 16, 2010); see also Hart v. Parks, 450 F.3d 1059, 1069 (9th Cir. 2006); Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Crowe, 608 F.3d at 440 (quoting United Steelworkers of Am., 865 F.2d at 1541).

Here, plaintiff's bare allegation that defendants "conspired" is altogether insufficient to raise even a plausible inference that defendants "by some concerted action, intended to accomplish some unlawful objective for the purpose of harming [plaintiff] which results in damage." Mendocino Envtl. Ctr., 192 F.3d at 1301. Accordingly, the Court finds that the allegations in the Complaint are insufficient to state a claim for conspiracy pursuant to § 1983 against any defendant.

Further, in order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) the existence of a conspiracy to deprive plaintiff of the equal protection of the laws, (2) an act in furtherance of the conspiracy, and (3) a resulting injury. See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1141 (9th Cir. 2000). The complaint must contain facts describing the overt acts that the defendants committed in furtherance of the conspiracy; a mere allegation of the existence of a conspiracy is insufficient to state a claim under § 1985. See Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1532 (9th Cir. 1992); Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990), cert. denied, 502 U.S. 957 (1991); Karim-Panahi, 839 F.2d at 626. Additionally, the complaint must allege that the conspiracy was the result of a

31

1   racial or class-based animus.  See Griffin v. Breckenridge, 403

2   U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971); Manistee

3   Town Center v. City of Glendale, 227 F.3d 1090, 1095 (9th Cir.

4   2000); Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.

5   1987).  Moreover, the absence of a showing of a deprivation of

6   plaintiff's constitutional rights "precludes a § 1985 conspiracy

7   claim predicated on the same allegations."  Caldeira v. County of

8   Kauai, 866 F.2d 1175, 1182 (9th Cir), cert. denied, 493 U.S. 817

9   (1989).

10       Here, plaintiff's bare allegation of the existence of a

11  conspiracy, even affording plaintiff the benefit of any doubt and

12  inferring that plaintiff intended to allege that Officer Mohammadi

13  and Sergeant Standage conspired against plaintiff based on his

14  Israeli nationality, also is insufficient to support any inference

15  (a) that a conspiracy existed between these defendants, or (b) that

16  the defendants' alleged actions were taken in furtherance of any

17  such conspiracy.  See Olsen v. Idaho State Bd. of Medicine, 363

18  F.3d 916, 929 (9th Cir. 2004) (affirming dismissal of § 1985

19  conspiracy claim where the plaintiff "failed to allege sufficiently

20  that the appellees conspired to violate her civil rights").

21  Plaintiff fails to allege any facts giving rise to any plausible

22  inference of an agreement between these defendants, or among any

23  other LAPD officers, to violate his constitutional rights.

24       Finally, it follows from the insufficiency of plaintiff's

25  allegations to state a conspiracy claim against the individual

26  defendants under 42 U.S.C. § 1985 that plaintiff's allegations also

27  are insufficient to state a conspiracy claim against defendants

28  pursuant to 42 U.S.C. § 1986.  See Karim-Panahi, 839 F.2d at 626;

1   see also, e.g., Sanchez, 936 F.2d at 1040; Trerice v. Pedersen, 769

2   F.2d 1398, 1403 (9th Cir. 1985) ("This Circuit has recently adopted

3   the broadly accepted principle that a cause of action is not

4   provided under 42 U.S.C. § 1986 absent a valid claim for relief

5   under § 1985.").

6   **E.   Plaintiff's allegations are insufficient to state a federal**

7       **civil rights claim against the City or the LAPD.**

8       The Supreme Court has held that a local government entity such

9   as the City and the LAPD "may not be sued under § 1983 for an

10  injury inflicted solely by its employees or agents.  Instead, it is

11  only when execution of a government's policy or custom, whether

12  made by its lawmakers or by those whose edicts or acts may fairly

13  be said to represent official policy, inflicts the injury that the

14  government as an entity is responsible under § 1983." Monell v.

15  New York City Dept. of Social Services, 436 U.S. 658, 694, 98 S.

16  Ct. 2018, 56 L. Ed. 2d 611 (1978).

17      Thus, the entity defendants may not be held liable for the

18  alleged actions of the officer defendants unless "the action that

19  is alleged to be unconstitutional implements or executes a policy

20  statement, ordinance, regulation, or decision officially adopted or

21  promulgated by that body's officers," or if the alleged

22  constitutional deprivation was "visited pursuant to a governmental

23  'custom' even though such a custom has not received formal approval

24  through the body's official decision-making channels." Monell, 436

25  U.S. at 690-91; see also Redman v. County of San Diego, 942 F.2d

26  1435, 1443-44 (9th Cir. 1991).

27      Here, plaintiff has failed to identify any policy statements

28  of the entity defendants, or any City or LAPD regulations, or

33

officially adopted or promulgated decisions, the execution of which by the officer defendants allegedly inflicted the injuries about which he is complaining.

Instead, plaintiff alleges that defendants permitted a "pattern and practice, custom and usage" of arresting people without probable cause, filing false police reports, not filing police reports, conducting deficient investigations and supervision, and "brutality, bias and discrimination against homeless, aliens, and, as in this case, religious discrimination" (Complaint at 13-14); that the LAPD "has a long history of institutional custom of harassing homeless people," and that the "custom" has been "allowed to go on by the Office of the City Attorney" (id. at 15); and that the LAPD has a history of discrimination against homeless people through "intimidation, excessive use of force, killings, jailings, impoundment of vehicles, etc." (id.).

However, as the Supreme Court recently held, plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Here, plaintiff merely alleges that the LAPD has a "pattern and practice" of "brutality" against the homeless and has "a long history of shameful discrimination against homeless people that always include[s] intimidation, excessive use of force," [etc.] (Complaint at 13, 15.) However, the Court notes that none of the factual allegations in plaintiff's Complaint, nor those in his attached list of his "Criminal History," include any other alleged incidents of the use of excessive force by the LAPD. The only other incident that may

34

allegedly involve the excessive use of force is an incident from
August 4, 2008, during which "General Services Dept. police
officers" are alleged to have "handcuffed [plaintiff] and put him
to his knees" for an hour and a half. (Complaint, Exh. 1 at 2.)
This one other incident, which resulted from plaintiff's encounter
with different law enforcement officers, does not constitute a
"pattern" or "long history" of "brutality" or the use of excessive
force. Moreover, plaintiff sets forth no factual allegations
concerning any alleged use of excessive force against any other
"homeless" individuals. Liability against the LAPD or the City may
not be premised on isolated or sporadic incidents by different
agencies of allegedly excessive force against plaintiff. <u>See,
e.g.</u>, <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996)
("Liability for improper custom may not be predicated on isolated
or sporadic incidents; it must be founded upon practices of
sufficient duration, frequency and consistency that the conduct has
become a traditional method of carrying out policy."); <u>Thompson v.
Los Angeles</u>, 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent
with the commonly understood meaning of custom, proof of random
acts or isolated events are insufficient to establish custom."),
<u>overruled on other grounds</u>, <u>Bull v. City & County of San Francisco</u>,
595 F.3d 964, 981 (9th Cir. 2010) (en banc). Further, plaintiff
does not specifically allege that Officer Mohammadi's alleged use
of excessive force during the incident on August 2, 2010, was the
result of a "deliberate policy, custom, or practice" promulgated by
either the LAPD or the City. <u>See, e.g.</u>, <u>Rimac v. Duncan</u>, 319 Fed.
Appx. 535, 537-38, 2009 WL 631616, at *2 (9th Cir. 2009) (now
citable for its persuasive value pursuant to Ninth Circuit Rule 36-

35

3) (finding that dismissal of plaintiff's <u>Monell</u> claims was proper where plaintiff did not adequately plead that his injuries resulted from a municipal custom or policy); <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 667 (9th Cir. 2007) (noting that, to succeed on a <u>Monell</u> claim, a plaintiff must establish that the entity "had a deliberate policy, custom, or practice that was the moving force behind the alleged constitutional violation he suffered" (internal quotation marks omitted)).

Accordingly, the Court finds that plaintiff's allegations in support of his <u>Monell</u> claim(s) consist of nothing more than isolated incidents combined with the kind of "formulaic recitation of the elements of a cause of action" that the Supreme Court held in <u>Twombly</u> was insufficient to state a claim because they do not rise "above the speculative level." <u>Twombly</u>, 550 U.S. at 555.[3]

*******************

For the reasons stated above, the court DENIES the Motion

---

[3]     The Court also notes that a <u>Monell</u> claim may not be pursued in the absence of an underlying constitutional deprivation or injury. <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); <u>Villegas v. Gilroy Garlic Festival Ass'n</u>, 541 F.3d 950, 957 (9th Cir. 2008) ("Because there is no constitutional violation, there can be no municipal liability."); <u>Fairley v. Luman</u>, 281 F.3d 913, 916 (9th Cir.) ("Exoneration of [the officer] of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force."), <u>cert. denied</u>, 537 U.S. 1044 (2002). Here, the Court has found that, other than an arguable Fourth Amendment excessive force claim against Officer Mohammadi, plaintiff's allegations are insufficient to state a federal civil rights claim for violation of his constitutional rights.

to Dismiss with respect to Plaintiff's Fourth Amendment excessive force claim against Officer Mohammadi.  The court GRANTS the Motion to Dismiss with prejudice with respect to all of plaintiff's other claims against all defendants.

Accordingly, Plaintiff's Request for Ruling on Defendant's Motion to Dismiss (Dckt. No. 93) and Plaintiff's Request for the Second Time for Ruling on Defendant's Motion to Dismiss (Dckt. No. 94) is hereby VACATED as moot.


IT IS SO ORDERED.



Dated:   August 6, 2013

_____
Hon. Dean D. Pregerson
United States District Judge

37