O

**CLOSED**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GARBER, ) | Case No. CV 10-07144 DDP (RNBx) |
| ) | |
| Plaintiff, ) | **ORDER RE DISMISSAL OF CASE** |
| ) | |
| v. ) | |
| ) | |
| MOHAMMADI, #36506, ) | |
| Lead-officer for the Los ) | |
| Angeles Police Department: ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Robert Garber is a pro se litigant who sued various officers of the Los Angeles Police Department (hereinafter, "LAPD") in connection with an incident that occurred at Woodley Park, in the San Fernando Valley area of Los Angeles, on August 7, 2010, among other incidents. Following the court's decision on a Rule 12(b)(6) motion by the defendants, the only claim remaining before trial was an excessive force claim against a single LAPD officer, Defendant Hamed Mohammadi. (See Dkt. No. 95.) This Order explains the court's decision to grant Defendant Mohammadi's Rule 50 Motion for Judgment as a Matter of Law.

**I.   Background**

Although the plaintiff is pro se, he is an experienced litigant. A review of the court's docket finds the following eight actions:

1. <u>Robert Garber v. City of Los Angeles et al.</u>, <u>2:06-cv-05417-UA-RNB</u>. Filed 08/28/06; closed 09/14/06.

2. <u>Robert Garber v. Los Angeles City of et al.</u>, <u>2:06-cv-06232-DDP-RNB</u>. Filed 09/29/06; closed 02/09/07.

3. <u>Robert Garber v. David M. Heilman et al.</u>, 2:08-cv-03585-DDP-RNB. Filed 06/02/08; closed 02/18/09.

4. <u>Robert Garber v. Jose Flores et al.</u>, 2:08-cv-04208-DDP-RNB. Filed 06/25/08; closed 06/10/09.

5. <u>Robert Garber v. Attorney General of the State of California.</u>, 2:08-cv-05764-UA-RNB. Filed 09/04/08; closed 09/17/08.

6. <u>Robert Garber v. Gildardo Vizcarra et al.</u>, 2:09-cv-05657-DDP-RNB. Filed 08/03/09; closed 09/29/11.

7. <u>Robert Garber v. Mohammadi et al.</u>, 2:10-cv-07144-DDP-RNB. Filed 09/24/10; closed 07/30/14.

8. <u>Robert Garber v. The City of Los Angeles et al.</u>, 2:07-cv-07254-DDP-RNB. Filed 11/05/07; closed 07/19/11.

Each of the eight suits was brought against police officers or concerned the conduct of the police. This court held a week-long jury trial with the plaintiff in the last case listed, in which the plaintiff represented himself in asserting an unreasonable force claim against two police officers.

The present case arose when, on the evening of August 7, 2010, Los Angeles Police Department ("LAPD") officers received a telephone call of an attempted kidnapping of a two-year-old child at Woodley Park. Multiple officers responded to the call, which was designated "Code 3," meaning "lights and sirens." A police search helicopter was also dispatched to locate the suspect. At the time,

1  Woodley Park was extremely crowded, with a cricket match, dog show,

2  and film production taking place.

3      The caller described a person exactly matching the plaintiff's

4  description and provided a licence plate number which matched the

5  licence plate number on the plaintiff's Ford Econoline van. The

6  plaintiff was located in front of his van by Officers David Torres

7  and Jeff Emmenheiser. Defendant Mohammadi, in the company of a

8  trainee officer, Anna Vardanian, arrived on the scene shortly

9  thereafter. As soon as the officers approached the plaintiff and

10  sought to ask him questions, he began to yell at the officers and

11  accuse them of harassing him. The officers detained and handcuffed

12  the plaintiff.[1] After being handcuffed, the plaintiff continued to

13  scream at the officers using threatening language, including

14  stating "I am going to make you suffer."

15      The plaintiff requested to speak with a supervisor. After

16  approximately thirty minutes, the defendant's supervisor, Seargant

17  Amy Standage, arrived on the scene. Several additional officers

18  also arrived. Shortly thereafter, the plaintiff was informed by

19  Seargant Standage that he was no longer a suspect in the reported

20  attempted kidnapping, and that he would be released and his

21  handcuffs would be removed if he calmed down.

22      However, the plaintiff did not calm down, and instead

23  persisted in screaming and making threatening statements to the

24  officers, including challenging an officer to a physical

25  altercation. The plaintiff also attempted to leave the scene while

26  still handcuffed. Several officers, not including Defendant

27

28      [1] Prior to trial, this court concluded that the detention was
supported by probable cause. (See Dkt. No. 95 at 18-21.)

3

Mohammadi, subdued him. For reasons of the plaintiff's safety, the safety of the officers, and the safety of the public, Sergeant Standage ordered that the plaintiff be taken to Olive View-UCLA Medical Center for a psychiatric evaluation. A hobble restraint was placed on the plaintiff by officers other than Defendant Mohammadi. Defendant Mohammadi and other officers then placed the plaintiff in a police car and took him to Olive View. The uncontroverted evidence was that the plaintiff was not cooperative and had to be hobbled and restrained in order to place him in the police car.

One of the officers videotaped the plaintiff during a portion of the incident. A copy of that video tape has been submitted under seal as Exhibit 52. (See Dkt. No. 144.) The court viewed a portion of the video tape during defense portion of the trial.

## II.  Discussion

The court is mindful that pro se litigants should be given reasonable latitude during the presentation of their case. See, e.g., Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082, 1084 (9th Cir. 1983). However, the court is also mindful that pro se litigants are bound by the same rules as everyone else, and cannot use their status to take undue advantage of opposing parties or otherwise disrupt the judicial process. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."); Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir. 1986) ("Pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record.").

In this case, the plaintiff was made aware that he carried the

4

burden of proving his excessive force claim by a preponderance of the evidence.  As noted above, prior to this proceeding, the plaintiff had already brought numerous lawsuits, including a case involving an excessive force claim which culminated in a week-long trial before this court. At the final pre-trial conference for the instant trial, the court explained the scope of the trial and advised the plaintiff to have his witnesses lined up and ready. During jury selection, the court explained the structure of the trial. Specifically, the court read from Model Jury Instruction 1.19, "Outline of Trial," which explains, *inter alia*, that, following opening arguments, the plaintiff would have an opportunity to present evidence (and counsel for the defendant may cross-examine) and then the defendant would have an opportunity to present evidence to rebut the plaintiff's case (and plaintiff may cross-examine).

On the first day of trial, the plaintiff called himself and the defendant as witnesses, but then had no other witnesses ready to call. The court adjusted the trial schedule to allow the plaintiff time to arrange for additional witnesses to be present. The next morning the plaintiff called two additional witnesses. When these witnesses concluded their testimony, the court explained--repeating itself several times--that the plaintiff needed to call another witness or rest. The court explained to the plaintiff that it was his case and that he needed to present evidence to prove his claim before resting. The court was not willing to permit the plaintiff to alter the order of proof in a way that would interfere with the orderly trial process. The plaintiff failed to respond to the court's explanation that the

1  plaintiff put on evidence or rest. The court thereupon deemed that
2  the plaintiff had rested.[2]

3      It became clear to the court after the plaintiff had rested
4  and the defendant began to present his case that the plaintiff had
5  not presented sufficient evidence such that a reasonable jury could
6  find in the plaintiff's favor against Defendant Mohammadi on his
7  excessive force claim. The court therefore granted the defendant's
8  Rule 50 Motion for Judgement as a Matter of Law. The defendant had
9  made the motion at the close of the plaintiff's case but the court
10 deferred ruling on the motion in order to expedite the proceedings.
11 The court's basis for granting the motion was as follows.

12     First, the plaintiff failed, in putting on his case, to
13 connect the only remaining defendant with any constitutional
14 violation. The plaintiff's own testimony, which the court allowed
15 the plaintiff to give from the lectern, was a rambling speech
16 describing his life and criticizing the LAPD in mostly general
17 terms. Despite numerous sustained objections by the defendant, the
18 testimony included little description of the incident at issue. The
19 plaintiff's only other percipient witness to the incident, besides
20 the defendant, was a woman who observed a portion of the incident.
21 She was unable to identify Defendant Mohammadi as engaging in any

22 ─────────────────
23     [2] The court notes that the plaintiff's failure to follow
   instructions in this circumstance was representative of his
24 behavior leading up to and during the trial. During the pre-trial
   conference, the plaintiff repeatedly interrupted the court and
25 questioned the court's legitimacy, causing the court to issue an
   order admonishing the plaintiff regarding his conduct in the
26 courtroom. (See Dkt. No. 125.) During the trial, the plaintiff
   interrupted and repeatedly disobeyed the court by, for instance,
27 repeatedly asking witnesses questions after he was instructed,
   following sustained objections by the defendant, to move on to a
28 new topic.

force against the plaintiff.[3] The defendant's testimony, which was corroborated by another officer at the scene and uncontradicted by any other witness, was that the defendant assisted another officer in placing handcuffs on the plaintiff when he was initially restrained. The evidence also established that Defendant Mohammadi assisted other officers in placing the plaintiff in the police car and transported him to Olive View hospital for a psychiatric evaluation.

There is no basis on which a reasonable jury could conclude that, in the circumstances presented, the defendant's actions involved unreasonable force. This became especially clear when the court reviewed a portion of the video of the incident. As shown in the recording, the plaintiff was extremely combative, uncooperative, and aggressive. He threatened, among other things, to make the officers "suffer" and stated "Why don't you take my cuffs off and be a man with me?"

There was no evidence introduced at trial that the force used in applying the handcuffs was excessive. When the plaintiff expressed discomfort with respect to the tightness of the cuffs, the officers checked to make sure there was sufficient wiggle room and allowed plaintiff to stand to be more comfortable.

With respect to the continued detention of the plaintiff after he was "cleared as a suspect," the court finds that it would have been irresponsible for Defendant Mohammadi or other officers to have simply released the plaintiff. His behavior while detained was

---

[3] This was the case notwithstanding the fact that the plaintiff attempted to lead this witness by suggesting in questions to her that it was Defendant Mohammadi who was involved in restraining the plaintiff.

extreme, and he appeared obviously to be suffering from a mental
health condition. Had the officers released him, the court finds
that officer safety could have been compromised. The plaintiff may
also, in his highly agitated state, have inadvertently endangered
himself or others. Given the context, the court finds that the
force applied was necessary to detain the plaintiff and transport
him to Olive View hospital. In summary, there was no evidence
introduced at trial that the force used was in any way
disproportionate to the danger posed by the plaintiff.

Second, although there was testimony that the plaintiff was
handcuffed, was transported to a police vehicle with handcuffs and
a leg hobble, and may have been on the ground with officers
attempting to subdue him, the plaintiff failed to present any
evidence of injury. He did not introduce, for example, medical
records or photographs depicting any injury. By contrast, the
defendant introduced as evidence two photographs of the plaintiff's
wrists and upper hands, which did not reflect any injury. It should
further be noted that the plaintiff was discharged from the
hospital later that same day and it seems unlikely to the court
that he would have been so discharged had he suffered any injuries
rising to the level of constituting a constitutional violation.

In essence, what occurred at Woodley Park was a perfect storm.
The plaintiff, who suffered from major depression, had a history of
suing the police, and clearly believed he had been mistreated by
LAPD officers in the past. At the same time, the LAPD received a
call concerning an attempted kidnapping of a two-year-old child,
describing the plaintiff, in particularity, as the perpetrator. The
nature of the call provoked legitimate concerns on the part of the

responding officers for their safety and that of others. When the police located the plaintiff, they appropriately detained him while they carried out their investigation. However, all the plaintiff knew at the time was that the LAPD, in his view, was interacting with him in a negative manner.

When the police officers attempted to explain to the plaintiff why he was being detained, that explanation failed to cause the plaintiff to moderate his extreme behavior. This is perhaps understandable in light of the fact that the plaintiff knew that he had not attempted to kidnap a child and believed the charge to be a pretext. However, the responding officers, of course, had no such certain knowledge. The plaintiff's aggressive and threatening conduct, which continued even after he was informed he was no longer a suspect, created a circumstance in which his continued detention was necessary to ensure public safety. The court understands how this sequence of events could have led the plaintiff to feel anger toward the police, and how this may have been exacerbated by the plaintiff's mental illness. The circumstances do not, however, equate to the use of excessive force by the officers, who acted entirely reasonably in the circumstances.

At the beginning of the trial, the court read to the jury the following statement of the case:

> In this civil case, Plaintiff Robert Garber contends that he was subjected to unreasonable force by a Los Angeles Police Department officer, Defendant Hamed Mohammadi, during an arrest.
>
> On August 7, 2010, in the course of responding to a call regarding the attempted kidnaping of a child, police officers, including Mr. Mohammadi, arrested Mr. Garber.

1        Mr. Garber alleges that, in the course of his arrest, Mr.

2        Mohammadi used excessive force in violation of his rights
under the Fourth Amendment of the U.S. Constitution.

3        The court has previously determined that the officers had
probable cause to arrest Mr. Garber. Probable cause, in this

4        context, is the legal standard for the lawful arrest of a
person. A finding of probable cause is based upon the

5        information available to the police at the time of an arrest.
It is not a finding that the person has committed any crime.

6

7        Mr. Garber was arrested. Upon investigation, the police
determined that no attempted kidnaping had occurred and there
was no basis to charge Mr. Garber with a crime.

8

9        The jury is tasked solely with determining whether Mr.
Mohammadi used excessive force in carrying out the arrest of

10       Mr. Garber. Prior to its deliberations, the jury will receive
further instructions regarding Mr. Garber's excessive force
claim.

11

12  (Dkt. No. 133.) The court presented the statement to avoid any

13  prejudice to the plaintiff arising from the nature of his

14  detention.

15

16  **III. Conclusion**

17     In sum, after the plaintiff had rested and the defendant began

18  to present his case, it was apparent to the court that the

19  plaintiff had not presented evidence from which a reasonable jury

20  would have a legally sufficient basis to find Defendant Mohammadi

21  liable on the plaintiff's excessive force claim. The LAPD was

22  investigating an extremely serious report involving the alleged

23  attempted kidnapping of a two-year-old child. The plaintiff fit the

24  description of the suspect and was detained. During the course of

25  that detention, while in handcuffs, the plaintiff was combative,

26  belligerent and otherwise presented a risk to the officers and

27  other members of the public. Given the above, the LAPD's use of

28  force was reasonable, as a matter of law, in subduing the plaintiff

1    and transporting him for a psychiatric evaluation. The plaintiff

2    failed to present any evidence of a use of force that would be in

3    any way be disproportionate to the necessity for restraining him

4    and transporting him to the psychiatric hospital. Nor did the

5    plaintiff present any evidence of injuries resulting from such

6    alleged excessive force.

7         Accordingly, the court concluded that granting of Defendant

8    Mohammadi's Motion for Judgement as a Matter of Law was warranted.

9

10

    IT IS SO ORDERED.

11

12   Dated: August 12, 2014

                                        DEAN D. PREGERSON
13                                      United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28